**UNITED STATES of America, Appellant,**

v.

**James S. MYERS, Individually and for his wife, Harriet Myers, and as Natural Guardian and Next Friend of James Myers, a Minor, et al., Appellees.**

**No. 22830.**

United States Court of Appeals Fifth Circuit.

July 6, 1966.

Kenneth J. Mighell, Asst. U. S. Atty., Dallas, Tex., Robert J. Vollen, Alan S. Rosenthal, Martin Jacobs, Robert V. Zener, Attys., Dept. of Justice, Washington, D. C., John W. Douglas, Asst. Atty. Gen., Melvin M. Diggs, U. S. Atty., for appellant.

Phillip L. Kelton, Paul Kemp Hyde, Wilson W. Herndon, Dallas, Tex., for appellees, Strasburger, Price, Kelton, Miller & Martin, Dallas, Tex., of counsel.

Bradford D. Corrigan, Jr., Golden, Croley, Howell, Johnson & Mizell, Dallas, Tex., for amicus curiae, National Rural Letter Carriers Assn., Marion Edwyn Harrison, Reeves, Harrison, Sams & Revercomb, Washington, D. C., of counsel.

Gambrell, Harlan, Russell & Moye, Atlanta, Ga., amicus curiae, on behalf of National Underwriters, etc., Charles A. Moye, Jr., Edward W. Killorin, George W. Hart, Atlanta, Ga., of counsel.

Before HUTCHESON and BELL, Circuit Judges, and FULTON, District Judge.

HUTCHESON, Circuit Judge:

This appeal is from a judgment dismissing the third-party complaint of the United States against Government Employees Insurance Company [GEIC] in a suit brought against the United States under the Federal Tort Claims Act, 28 U.S.C. Secs. 1346(b), 2671–2680. The suit was instituted to recover for injuries and damages sustained in an automobile accident involving an automobile owned and operated by a United States employee, Elwood C. Pugh, who at the time of the accident was acting within the scope of his employment. The question before us is whether the United States is entitled to recover as an additional "insured" under the automobile liability policy issued by GEIC to Pugh and in force at the time of the accident, which defined "insured" to include "any other person or organization legally responsible for the use of [the insured automobile] * * *."

The district court similarly stated the issue posed for decision. It then determined that an "interpretation" of the Pugh policy was necessary to ascertain whether the United States was intended by the parties to the policy—Mr. Pugh and GEIC—to be included as an additional "insured" under the policy. The court concluded that the United States was not intended as an additional "insured", relying on the fact that the policy was designed to cover primarily "pleasure" uses of the Pugh automobile; that the premium rate basis of the policy was "pleasure use"; and that had the premium rate basis been "business use", Mr. Pugh would have paid a substantially higher premium. The court also looked to the 1961 amendments to the Federal Tort Claims Act (28 U.S.C. Section 2679 (b)–(e)); noted that these amendments provide for assumption by the Federal Government of responsibility for claims for damages against Government employees arising from the operation by them of vehicles in the scope of their Government employment; and ruled that the amendments evidence a Congressional intent that the United States not be allowed recovery from an employee's liability insurer. Myers v. United States, 241 F.Supp. 515 (N.D.Tex.1965). We have carefully and closely examined the district court's findings and conclusions, but we are unable to agree with or accept them.

The court below rested its decision on its "interpretation" of the insurance contract between Mr. Pugh and GEIC to determine whether the parties to that contract "intended" to include the United States within its coverage. But the court's efforts in this regard are entirely misdirected. For in the case at bar "interpretation" as such is not only unnecessary, but wholly inappropriate.

In very plain language Mr. Pugh's policy insures any "person or organization legally responsible for the use" of the insured automobile. The only question in the court below was, and in this court is, whether the United States may qualify as an additional "insured"

under this language. And we are convinced that this no longer is a question to be answered by applying the usual rules of contract construction. On the contrary, an unbroken line of cases, presenting this very question and involving the same or very similar contract language, has definitively answered the question in favor of the United States.[1]

■■ It would indeed be difficult to conceive of a situation in which the meaning of disputed language was more firmly and finally decided, and where "interpretation" as such was so unnecessary. For GEIC has continued using the disputed language in the face of the many judicial pronouncements holding that the United States is an additional "insured" thereunder. It must be presumed that GEIC continued using the disputed phrase understanding that it would be given a meaning consonant with the repeated judicial interpretations thereof. In these circumstances GEIC cannot now argue that it did not "intend" to include the United States within the disputed phrase; rather by retaining this phrase it is deemed to have acquiesced in, and must now accept, the definite and only meaning given the phrase by prior decisions. Government Employees Ins. Co. v. United States, 349 F.2d 83, 86 (10th Cir. 1965), cert denied, 382 U.S. 1026, 86 S.Ct. 646, 15 L.Ed.2d 539 (1966); Adams v. United States, 241 F.Supp. 383, 385 (S.D.Ill.1965); Patterson v. United States, 233 F.Supp. 447, 449 (E.D.Tenn. 1964).[2]

■ Fully cognizant of the wealth of authority opposing its conclusions, the district court attempted to distinguish the above referenced cases. The court observed that the Pugh policy insured primarily "pleasure" uses of Mr. Pugh's automobile, and would have cost much more had Mr. Pugh specified that he intended to use his automobile for business purposes; for the court this was sufficient to render the prior decisions inapposite, since they all "dealt with policies specifying the employees' occupation (such as 'mail carrier') and provided coverage for 'business' use of the covered automobile." 241 F.Supp. at 519.

This analysis is completely wide of the mark. In none of the referenced cases did the court rest its decision on the existence or non-existence of "business

---

1. Government Employees Ins. Co. v. United States, 349 F.2d 83 (10th Cir. 1965), cert. denied 382 U.S. 1026, 86 S.Ct. 646, 15 L.Ed.2d 539 (1966); Adams v. United States, 241 F.Supp. 383 (S.D.Ill. 1965); Purcell v. United States, 242 F. Supp. 789 (D.Minn.1965); United States v. State Farm Mut. Auto. Ins. Co., 245 F.Supp. 58 (D.Ore.1965); Barker v. United States, 233 F.Supp. 455 (N.D.Ga. 1964); Gahagan v. State Farm Mut. Auto. Ins. Co., 233 F.Supp. 171 (W.D. La.1964); Nistendirk v. United States, 225 F.Supp. 884 (W.D.Mo.1964); Mc-Crary v. United States, 235 F.Supp. 33 (E.D.Tenn.1964); Patterson v. United States, 233 F.Supp. 447; Vaughn v. United States, 225 F.Supp. 890 (E.D.Tenn. 1964); Nistendirk v. McGee, 225 F.Supp. 883 (W.D.Mo.1963); Irvin v. United States, 148 F.Supp. 25 (D.S.D.1957); Rowley v. United States, 140 F.Supp. 295 (D.Utah 1956). See also the following unreported cases: Percivill v. United States, Civil No. 1454, W.D.Tex., March 1, 1966; United States v. National Ins. Underwriters, Civil No. 3549(J), S.D. Miss., July 7, 1965; Blagg v. United States, Civil No. 1768, W.D.Ark., April 16, 1964; Town v. United States, No. 64–577–JWC, S.D.Cal., Oct. 30, 1964; Chatham v. Hunt, Civil No. 1972, M.D. Ga., Dec. 30, 1964; Schuessler v. United States, Civil No. 5250, E.D.Ill., June 12, 1964; Davenport v. United States, Civil No. 6–1533–C, S.D.Iowa, Oct. 13, 1964; Gabriel v. United States, Civil No. 64–C–3–D, W.D.Va., ———, 19—; Helms v. United States, Civil Nos. 1735 and 1736, W.D.N.C., Aug. ———, 1963.

It should be noted that while Judge Neese in Gipson v. Shelley, 219 F.Supp. 915 (E.D.Tenn.1963), refused to follow this long line of judicial pronouncements, he subsequently modified his position, although continuing to espouse his dissenting views, in McCrary v. United States, supra. See note 6 infra.

2. Accord the following unreported cases; Percivill v. United States, Civil No. 1454, W.D.Tex., March 1, 1966; Schuessler v. United States, Civil No. 5250, E.D.Ill., June 12, 1964. See also 13 Appleman, Insurance Law and Practice Sec. 7404 (1943); 44 C.J.S. Insurance § 293 (1945).

use" coverage. The one court that has specifically considered this point rejected it point blank as irrelevant to the question here presented. Town v. United States, No. 64–577–JWC, S.D.Cal., Oct. 30, 1964. Cf. Percivill v. United States, Civil No. 1454, W.D.Tex., March 1, 1966.[3] And clearly this is correct. The "pleasure-business" argument would, if at all appropriate, go to whether the *accident* here involved was within the coverage of the policy. But no questions are raised in this regard. Thus the court's "pleasure-business" analysis must be rejected.[4]

It must be remembered that GEIC selected the disputed language which it utilized in its policy. With knowledge of the accepted interpretation of that language, certainly GEIC could and should have expressly excluded the United States as an "insured" under its policy if it was dissatisfied with the accepted construc-

tion. This GEIC has in fact recently done.[5] Since it did not do so before the accident here in question, it must be held responsible for this dereliction. See Patterson v. United States, 233 F.Supp. 447, 449 (E.D.Tenn.1964); Irvin v. United States, 148 F.Supp. 25, 32 (D.S.D.1957). See also Gabriel v. United States, Civil No. 64–C–3–D, W.D.Va., ......, 19...

■ We must also reject the district court's analysis of the effects of the 1961 amendments to the Federal Tort Claims Act 28 U.S.C. Section 2679(b)–(e). The court distilled from these amendments a Congressional intent that the United States now assume full responsibility for claims for damages resulting from automobile accidents involving Government employees while acting within the scope of their Government employment, to the exclusion of any action against such

3. In the following cases the courts upheld recovery by the Government as an additional "insured" without any mention of or reliance on whether the policy covered "business" as well as "pleasure" uses of the insured automobile: Adams v. United States, 241 F.Supp. 383 (E.D.Ill.1965); United States v. State Farm Mut. Auto. Ins. Co., 245 F.Supp. 58 (D.Ore.1965); Davenport v. United States, Civil No. 6–1533–C, S.D.Iowa, Oct. 13, 1964; Gahagan v. State Farm Mut. Auto. Ins. Co., 233 F.Supp. 171 (W.D.La.1964); McCrary v. United States, 235 F.Supp. 33 (E.D.Tenn.1964); Helms v. United States, Civil Nos. 1735 and 1736, W.D. N.C., Aug. ——, 1963.

4. We cannot improve upon the following statement from the Government's brief, which succinctly summarizes our own views:

> * * * The issue here is not whether the policy covered the business use of the vehicle by Pugh. As the district court expressly determined, notwithstanding the considerations which it emphasized, Pugh himself was insured under the policy when, at the time of the accident, he was driving the vehicle on government business * * *.
>
> The issue, instead, is whether not only Pugh but, in addition, the United States was insured at the time of the accident. This issue, we stress again, necessarily must be resolved on the basis of the omnibus clause, which specifies who,—apart from the name insured—shall be entitled

to coverage as an "additional insured". And, as we have shown, there can be no question that, while it could have been written to exclude the United States from coverage, the omnibus clause in the present policy was drafted so as plainly to include the United States.

Stated otherwise, the district court failed to perceive that the consideration [on] which it relied could have had a bearing, at most, upon a matter which was not in dispute in this case: viz., whether the policy covered the use which was being made of the Pugh vehicle when the accident occurred. Those considerations manifestly had no relevance to the matter which was in dispute; viz., whether the use of the vehicle being within the coverage of the policy, the United States was entitled to the benefit of that coverage because it came within the omnibus clause definition of "insured".

5. Judge Estes, in deciding the instant case, observed that "[a]fter the issuance of the policy in question the Texas Insurance Commission * * * promulgated a standard endorsement excluding the United States as an 'insured' and excluding from liability coverage any accident covered by the Federal Tort Claims Act." 241 F.Supp. at 519 n. 4. This readily illustrates that GEIC not only was aware of the problem here involved and of the prior judicial interpretations of its policy language, but also knew what to do about it.

employees personally. And indeed this was the intent, and is the effect, of the amendments. See Uptagrafft v. United States, 315 F.2d 200, 204 (4th Cir. 1963), cert. denied, 375 U.S. 818, 84 S.Ct. 54, 11 L.Ed.2d 52 (1963).

But nowhere in the amendments is there any indication that Congress intended to preclude recovery by the United States from the employee's liability carrier, where the employee has voluntarily, albeit unnecessarily, included the United States as an "insured" under his policy. The court below found this intent implied from the fact that Congress did not expressly include within the amendments authority for the United States to proceed against its employees' insurers. However these amendments had as their purpose the protection of Government employees from personal liability arising from automobile accidents negligently caused by them; they were not designed to, and should not be held to, affect the rights created by and existing by virtue of insurance contracts taken out by Government employees. Plainly Government employees no longer need to insure against automobile accidents occurring while they are acting within the scope of their Government employment; but nothing prohibits them from doing so if they so choose. In light of the host of judicial

determinations that the United States may recover as an additional "insured" under the language here involved and where the policy includes business accidents, many decided before Congress enacted the 1961 amendments to the Federal Tort Claims Act, we cannot believe that Congress would have left its intent to overrule these decisions to implication. Rather it would have, and certainly should have, expressly declared its views if they were contrary to the accepted judicial construction. And with but one exception[6] other than the present case, all courts that have considered this problem since the 1961 amendments have upheld continued Government recovery as an additional "insured".[7]

■■ We recognize the apparent conflict between the requirements expressed in 28 U.S.C. Section 2679 (b)–(e) and the terms and provisions of Mr. Pugh's insurance contract.[8] We note that in the present case the United States has in fact fully complied with the applicable policy provisions—it gave notice of the present suit to GEIC, requested it to defend the suit, and proceeded to defend (and ultimately settle) the suit only after GEIC refused to do so. This of course is a right enjoyed by any insured upon an unwarranted refusal to defend by its

---

6. Gipson v. Shelley, 219 F.Supp. 915 (E. D.Tenn.1963). Judge Neese, who authored the Gipson opinion, adhered to his views in McCrary v. United States, 235 F.Supp. 33 (E.D.Tenn.1964), but nevertheless, in light of the overwhelming authority to the contrary, upheld the Government's claim as an insured "for the sake of uniformity."

7. Percivill v. United States, Civil No. 1454, W.D.Tex., March 1, 1966; Adams v. United States, 241 F.Supp. 383 (S.D.Ill. 1965); United States v. National Ins. Underwriters, Civil No. 3549(J), S.D. Miss., July 7, 1965; Town v. United States, No. 64–577–JWC, S.D.Cal., Oct. 30, 1964; Chatham v. Hunt, Civil No. 1972, M.D.Ga., Dec. 30, 1964; Gahagan v. State Farm Mut. Auto. Ins. Co., 233 F.Supp. 171 (W.D.La.1964); Patterson v. United States, 233 F.Supp. 447 (E.D. Tenn.1964); Gabriel v. United States, Civil No. 64–C–3–D, W.D.Va., —— ——,

19——. Cf. Government Employees Ins. Co. v. United States, 349 F.2d 83 (10th Cir. 1965), cert. denied, 382 U.S. 1026, 86 S.Ct. 646, 15 L.Ed.2d 539 (1966).

8. Under the insurance contract the insurer (GEIC) is granted the right to control any action it defends, through its own attorneys, and by any means it chooses (jury trial, non-jury trial, settlement, etc.); and the "insureds" under the policy can settle only with the written consent or agreement of the insurer. By virtue of 28 U.S.C. Sec. 2679(b)–(e), the Attorney General of the United States is directed to defend any action in which the United States assumes responsibility for claims against its employees; trial is to be had in a United States District Court and is without a jury (28 U.S.C. Sec. 2402); and the Attorney General may compromise or settle any claim asserted against the employee.

insurer.[9] And we are convinced that had GEIC honored its contractual obligation and defended this suit, it would have been entitled to insist upon compliance by the United States with the other terms and provisions of the insurance contract. For if the United States chooses to seek recovery under an insurance policy insuring its employee and incidentally also insuring it, certainly it is only fair and reasonable that it should abide by the terms and provisions contained in the policy. This in nowise is inconsistent with the general scheme of the Federal Tort Claims Act as amended in 1961; while adherence to the policy terms and provisions may require modification of the prescribed procedures of the FTCA, yet it in no way detracts from, or interferes with, the Act as a whole. See Chatham v. Hunt, Civil No. 1972, M.D. Ga., Dec. 30, 1964. Compare Government Employees Ins. Co. v. United States, supra, 349 F.2d at 85.

■ One last matter remains. GEIC, after notice of the instant suit and a request to defend, refused to do so. As the United States was an "insured" under the policy (as we have heretofore held), this refusal was a breach of GEIC's contractual obligations to the United States under the policy; because of this unwarranted refusal, the United States was required to defend the suit itself. It now seeks to recover from GEIC the reasonable attorney's fees incurred in this defense, stipulated at $300. GEIC answers that the Government has not incurred "attorney's fees" as that term is generally understood, since the United States attorneys are on the Government payroll anyway as salaried employees, and should not be allowed any recovery therefor.

■ Without question GEIC breached its contractual duty to defend the United States; and this breach of duty compelled the United States to defend the suit solely on its own. Ordinarily where an insured must conduct its own defense due to an unwarranted refusal to defend by the insurer, the insured is entitled to recover the expenses of litigation, including attorney's fees. 7A Appleman, Insurance Law and Practice, Sections 4689–91 (1962). We can conceive of no sound reason for denying the United States, since it too was an "insured" under the policy, this right of reimbursement, to which every other "insured" would be entitled. A different result is not required merely because the attorneys representing the United States are Government employees, and are paid a salary by the United States for performing their services. United States v. State Farm Mut. Auto. Ins. Co., 245 F.Supp. 58, 59–60 (D.Ore.1965). Cf. Amato v. United States, 167 F.Supp. 929, 937 (S.D. N.Y.1958). Compare Pittsburgh Plate Glass Co. v. Fidelity & Cas. Co., 281 F.2d 538, 542 (3rd Cir. 1960); Stichman v. Michigan Mut. Lia. Co., 220 F.Supp. 848, 854 (S.D.N.Y.1963). As the parties are agreed that $300 represents a reasonable reimbursement to the Government for the services rendered by its attorneys in settling this claim, we award that additional amount to the United Staes.

For the foregoing reasons the judgment of the district court is reversed, and judgment is rendered in favor of the United States for the sums paid by it in settlement of the claims here asserted ($5,000) and for its reasonable attorney's fees in connection therewith ($300).

Reversed and rendered.

9. 7A Appleman, Insurance Law and Practice, Secs. 4690–91 (1962).