Effie Lee WATKINS

v.

UNITED STATES of America and
Joseph L. Williams.

Civ. A. No. 176–91.

United States District Court,
S. D. Georgia,
Augusta Division.

Jan. 3, 1977.

Thomas R. Burnside, Jr., Augusta, Ga., J. Cecil Davis, E. Purnell Davis, Warrenton,

Ga., Robert A. Dempster, Dempster, Yokley, Fuchs & Barkett, Sikeston, Mo., for plaintiff.

R. Jackson B. Smith, Jr., U. S. Atty., Edmund A. Booth, Jr., Asst. U. S. Atty., Augusta, Ga., for United States.

Stanley G. Jackson, Augusta, Ga., for Joseph L. Williams.

Leonard O. Fletcher, Augusta, Ga., for Government Employees Ins. Co.

ALAIMO, District Judge.

ORDER

The plaintiff's husband, a serviceman stationed at Fort Gordon, Georgia, was killed on base when his motorcycle collided with a shuttle bus driven by a civilian government employee. After the denial of her administrative claim, plaintiff, Effie Lee Watkins, a Missouri resident, brought this action against the United States under the Federal Tort Claims Act, 28 U.S.C. § 2671 et seq., and its jurisdictional arm, 28 U.S.C. § 1346(b). The Georgia driver, Joseph L. Williams, was also named as a defendant.

Williams moved to dismiss on the basis of the Federal Drivers Act, 28 U.S.C. § 2679(b), contending he was within the scope of his employment. The United States, moved to dismiss pursuant to *Feres v. United States*, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950), which precludes government tort liability for injuries arising from activities incident to military service.

Alleging that Williams was an uninsured motorist, plaintiff also claimed the right to recover against Government Employees Insurance Company [GEICO], the decedent's uninsured motorist insurance carrier. GEICO was served as though named a defendant, pursuant to *Ga.Code Ann.* § 56–407.-1(d). GEICO answered and counterclaimed for a judgment declaring that Williams was "within the scope." Such a finding, in GEICO's view, would insulate it from liability because of Georgia cases requiring an insured to procure a judgment against a known uninsured motorist as a condition precedent to suit on an uninsured motorist policy.

Also before the Court for consideration is a motion to intervene as plaintiff by Joyce Ann Aquino, decedent's former wife, the mother and guardian of decedent's two surviving minor children.

### I. Was Williams Acting "Within the Scope?"

Under the Federal Tort Claims Act, the United States is only liable for negligence of government employees "acting within the scope of [their] office or employment," in circumstances such that a private person "would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b). Thus, if Williams was not "within the scope," the United States would have no liability under this statute.

On the other hand, if Williams *was* "within the scope," he would be insulated from personal liability by the Federal Drivers Act, which makes the Tort Claims Act remedy "exclusive of any other civil action or proceeding by reason of the same subject matter against the employee . . . whose act . . . gave rise to the claim." 28 U.S.C. § 2679(b).

The original complaint herein alleged that Williams was "acting within the course and scope of his employment" while driving the government's shuttle bus. Williams moved to dismiss, relying on the Federal Drivers Act. The complaint was amended to state a diversity claim against Williams individually and to allege in the alternative that he was *not* acting "within the scope."

■ The Federal Tort Claims Act makes the liability of the United States depend on the law of the place where the negligence occurred. *See generally Richards v. United States*, 369 U.S. 1, 82 S.Ct. 585, 7 L.Ed.2d 492 (1962). Thus, the Court must resolve the "scope" issue [1] under the Georgia law of

---

1. *See, e. g., Levin v. Taylor*, 150 U.S.App.D.C. 261, 464 F.2d 770 (1972); *Jones v. Polishuk*, 252 F.Supp. 752 (E.D. Tenn. 1965).

*respondeat superior.* See *Johnson v. Franklin*, 312 F.Supp. 310 (S.D. Ga. 1970).

 *Ga. Code Ann.* § 105–108 provides that "[e]very person shall be liable for torts committed by his . . . servant . . within the scope of his business . . . ." The test is not whether the servant's act was done during the existence of the employment. The test is "whether it was done in the prosecution of the master's business; whether the servant was . . . engaged in serving his master." *West Point Pepperell v. Knowles*, 132 Ga.App. 253, 256, 208 S.E.2d 17, 20 (1974), *quoting Jones v. Dixie Ohio Express, Inc.*, 116 Ga.App. 155, 156, 156 S.E.2d 388 (1967). This is ordinarily an issue for the trier of fact, "except in plain and indisputable cases." See *West Point Pepperell v. Knowles, supra*, 132 Ga. App. at 256, 208 S.E.2d at 20.

> A special rule applies to vehicular collisions: "When an automobile is in a collision and the operator is an employee of the owner, a presumption exists that the operator was in the scope of his employment and the burden is then on the employer to show to the contrary."

*Georgia Power Co. v. Mozingo*, 132 Ga.App. 666, 668, 209 S.E.2d 66, 69 (1974), *citing Dawson Motor Co. v. Petty*, 53 Ga.App. 746, 749, 186 S.E. 877 (1936). The inference "is overcome when there is uncontradicted positive evidence that the employee was . . on a purely personal mission . . . ." *Price v. Star Service & Petroleum Corp.*, 119 Ga.App. 171, 174, 166 S.E.2d 593, 596 (1969).

In the present case, plaintiff first alleged Williams was within the scope of his employment, then alleged in the alternative a deviation therefrom. Williams testified by affidavit (filed June 24, 1976) that he was driving his regular route as a civilian bus driver for the United States at Fort Gordon when the collision occurred. Plaintiff filed a brief (August 16, 1976) attacking the final part of the affidavit as conclusory, and relying on the Government's refusal to certify "scope" under the statute. The Government has since made the statutory certification pursuant to 28 U.S.C. § 2679(d).

 The plaintiff then took Williams' deposition. Counsel thoroughly investigated Williams' activities on the day in question. The deposition clearly establishes that Williams was driving his regular bus route, without deviation, when the collision occurred. Plaintiff did elicit testimony that Williams had consumed "a beer" with his lunch, approximately four hours before the collision. Williams was positive he did not drink anything on duty. There is no evidence that he was intoxicated. The facts testified to in this deposition are absolutely uncontroverted in the record.[2]

Williams was clearly prosecuting his master's business, meeting the test of *West Point Pepperell v. Knowles, supra.* Moreover, the special presumption that an employee-driver is "within the scope" applies here. In such a situation, absent "clear, positive and uncontradicted" evidence that the employee had deviated from his employment, the employee is within the scope as a matter of law. See *Georgia Power Co. v. Mozingo, supra,* 132 Ga.App. at 668, 209 S.E.2d 66.

Plaintiff's bare alternative allegation that Williams had deviated from his employment was pierced by the uncontradicted testimony of Williams' deposition. Williams' motion to dismiss, supported by his affidavit and deposition, must be construed as a motion for summary judgment. Rule 12(b), Fed.R.Civ.P. The burden thus devolved upon plaintiff under Rule 56(e) to "set forth specific facts showing that there is a genuine issue for trial." This plaintiff failed to do. A summary judgment that

---

**2.** The Court takes judicial notice of its own records which show that defendant Williams was convicted by a jury of violating 18 U.S.C. § 1112 (involuntary manslaughter) based on the same collision. See *United States v. Joseph Louis Williams*, Criminal No. 175–213 (S.D. Ga. 1975). This fact is irrelevant to the "scope" issue herein.

"If the criminal act of the servant was done within the range of his employment, and for the purpose of accomplishing the authorized business of the master, the latter is liable." *American Oil Co. v. McCluskey*, 119 Ga.App. 475, 477, 167 S.E.2d 711, 714 (1969), *quoting Southern R. Co. v. James*, 118 Ga. 340, 344, 45 S.E. 303 (1903).

Williams was within the scope of his employment is therefore demanded. *Cf. Price v. Star Service & Petroleum Corp., supra* (summary judgment that employee was outside scope); *Marketing Sales Industries of Georgia, Inc. v. Roberts,* 118 Ga.App. 718, 165 S.E.2d 319 (1968) (same).

## II. *Williams' Motion to Dismiss (Federal Drivers Act).*

■ Because Williams was "within the scope," he can claim the protection of the Federal Drivers Act, 28 U.S.C. § 2679(b). This statute provides, in substance, that when a federal employee causes injury while driving a vehicle within the scope of his employment, a claim against the United States under the Federal Tort Claims Act is the exclusive civil remedy.[3] The United States thus assumes full responsibility for damages in such situations "to the exclusion of any action against such employees personally." *United States v. Myers,* 363 F.2d 615, 619–20 (5th Cir. 1966). This exclusivity implements the statutory purposes of immunizing government drivers from personal liability for covered accidents and relieving them from having to provide liability insurance for driving on the job. *See, e. g., Vantrease v. United States,* 400 F.2d 853, 854 (6th Cir. 1968).

In the present case, Williams is protected by the Federal Drivers Act, and must be dismissed. *See, e. g., Binn v. United States,* 389 F.Supp. 988 (E.D. Wis. 1975); *accord, Johnson v. United States,* 404 F.2d 22 (5th Cir. 1968) (removal of state action against federal driver to federal court and substitution of United States as defendant). Williams' motion to dismiss, construed as a motion for summary judgment, must be granted.

## III. *The United States' Motion for Summary Judgment (Feres Doctrine).*

The Federal Tort Claims Act (FTCA), 28 U.S.C. § 2671 *et seq.,* does not expressly exclude the military serviceman as a plaintiff. In *Brooks v. United States,* 337 U.S. 49, 69 S.Ct. 918, 919, 93 L.Ed. 1200 (1949), the Supreme Court held that members of the armed forces can recover under the FTCA "for injuries not incident to their service." There, two servicemen (brothers) were driving in the family automobile with their father on a public highway when their vehicle was struck by an Army truck. The soldiers were on furlough. The injuries were held to have "nothing to do with the Brooks' army careers . . . ." *Id.* at, 52, 69 S.Ct. at 920. The Court found no causal nexus with the plaintiffs' military service.

By contrast, in *Feres v. United States,* 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950), the Court held:

> "[T]he Government is not liable under the Federal Torts Claims Act for injuries to servicemen where the injuries arise out of or are in the course of activity incident to service."

*Id.* at 146, 71 S.Ct. at 159. *Feres* involved three servicemen: one had perished in a barracks fire, and two had been injured by alleged negligence in Army medical treatment. The "common thread" was that all were injured by Army personnel "while on active duty and not on furlough . . . ." *Id.* at 138, 71 S.Ct. at 155. *Feres* distinguished the injury in *Brooks* as not arising in the course of "military duty" since *Brooks* was on furlough and was under no military order, duty, or mission.

In its third such case, the Supreme Court in *United States v. Brown,* 348 U.S. 110, 75 S.Ct. 141, 99 L.Ed. 139 (1954) held that a veteran injured in a Veterans Administration hospital after his discharge from the service, for injuries received in the service, could recover under the FTCA. The court applied *Brooks* and distinguished *Feres.*

---

**3.** 28 U.S.C. § 2679(b) provides as follows:

"(b) The remedy against the United States provided by sections 1346(b) and 2672 of this title for injury or loss of property or personal injury or death, resulting from the operation by any employee of the Government of any motor vehicle while acting within the scope of his office of employment, shall hereafter be exclusive of any other civil action or proceeding by reason of the same subject matter against the employee or his estate whose act or omission gave rise to the claim."

The distinctions and reasoning of these cases have spawned a plethora of lower-court decisions in particular factual contexts, most of which seemingly have been cited by able counsel for the parties.

■ Certain principles have emerged in the cases. The fact that the injury was inflicted by non-military personnel does not bar operation of the *Feres* doctrine. *See, e. g., Hass v. United States*, 518 F.2d 1138, 1141 (4th Cir. 1975); *United States v. Lee*, 400 F.2d 558 (9th Cir. 1968), *cert. denied*, 393 U.S. 1053, 89 S.Ct. 691, 21 L.Ed.2d 695 (1969).

Where a serviceman on active duty is injured by negligent medical treatment at a military hospital, the *Feres* doctrine applies. *See, e.g., Hall v. United States*, 451 F.2d 353 (1st Cir. 1971); *Lowe v. United States*, 440 F.2d 452 (5th Cir. 1971); *Shults v. United States*, 421 F.2d 170 (5th Cir. 1969). This holds true even where the initial injury which brought the serviceman to the military hospital in the first place was *not* incident to service, because he would not have been admitted to the military hospital for treatment "except for his military status." *See Shults v. United States, supra* at 171. This principle approaches a "but/for" test: if the injury would not have occurred "but for" military status, it is "incident to service."

■ A related principle is that the status of the claimant, rather than the status of the tortfeasor, controls. *See, e.g., United States v. Lee, supra* at 562; *Frazier v. United States*, 372 F.Supp. 208, 210 (M.D. Fla. 1973). The court in *Frazier* concluded that in the Fifth Circuit cases above cited, "the determinative factor under the *Feres* doctrine is the *status of the claimant." Id.* at 210.

The major source of confusion is certain language in *United States v. Brown, supra.* In applying *Brooks* and distinguishing *Feres*, the *Brown* court stated that fears of adverse effects on military discipline were behind the *Feres* doctrine. *See* 348 U.S. at

112, 75 S.Ct. 141. Asserting that the Supreme Court cases had created confusion, the Sixth Circuit in *Hale v. United States*, 416 F.2d 355 (6th Cir. 1969) attempted a clarification. Citing the language in *Brown* and *dicta* approving it in *United States v. Muniz*, 374 U.S. 150, 162, 83 S.Ct. 1850, 1858, 10 L.Ed.2d 805 (1963), the Sixth Circuit held the appropriate test to be whether injuries arose " 'in the course of military duty,' " which was a narrower test, in its view, than "incident to service." *Id.* 416 F.2d at 360.

No other Circuit has agreed with this re-interpretation of *Feres*; at least two have rejected it outright. *See Hall v. United States*, 451 F.2d 353, 354 (1st Cir. 1971); *United States v. Lee*, 400 F.2d 558, 563–64 (9th Cir. 1968), *cert. denied*, 393 U.S. 1053, 89 S.Ct. 691, 21 L.Ed.2d 695 (1969). The Supreme Court has used the terms "incident to service" and "in the course of military duty" interchangeably. While military discipline may have been one of the factors behind *Feres*, the weight of authority is that this factor is not an indispensable element of the *Feres* doctrine. Although the Fifth Circuit has not spoken directly to this point, its decisions are consistent with *Hall* and *Lee, supra.* The Fifth Circuit cases simply do not mention military discipline as a factor, or military duty as the test. Instead, *Feres* is applied in a predictable and fairly mechanical fashion. *See, e.g., Beaucoudray v. United States*, 490 F.2d 86 (5th Cir. 1974); *Lowe v. United States, supra; Shults v. United States, supra; Zoula v. United States*, 217 F.2d 81 (5th Cir. 1954). In *Zoula*, the court flatly rejected the notion that *Feres* only applied where servicemen are injured "as a result of, or while acting under, immediate and direct military orders . . . ." 217 F.2d at 84. Plaintiff's reliance on *Hale, supra*, is unavailing. The question is whether, under *Feres* and its progeny, the injury arose from activity incident to military service.[4]

Against this legal backdrop, it becomes necessary to examine the relevant facts in

---

**4.** For this reason, *Downes v. United States*, 249 F.Supp. 626 (E.D. N.C. 1965) is likewise inapposite. Its *ratio decidendi* was purely the "military discipline" test.

the record, as shown by the affidavits and depositions on file. The decedent, Jimmy Dale Watkins, was a staff sergeant on active duty in the United States Army as an instructor in the Signal School at Fort Gordon, Georgia. On May 16, 1975, after the completion of his normal duty hours at 3:30 P.M., Sergeant Watkins attended practice with the First Battalion fast-pitch softball team, of which he was a member. The practice was held on a playing field at Fort Gordon, as a part of a voluntary recreation program governed by army regulations (on both the local and army-wide levels). When rain halted the practice, Sergeant Watkins left on his personal motorcycle for an undisclosed destination. He was then fatally injured on post in a collision with a post shuttle bus. At the time of the collision, Sergeant Watkins was neither on leave nor on pass.[5] His status was "present for duty" until he died.[6] Plaintiff does not contest these facts. But plaintiff points out that Watkins had no further specific duties after 3:30 P.M., Friday until the following Monday morning at 7:30. He was not expected by his superiors until that time.

The parties have cited numerous cases involving similar factual situations. The Government begins with *Thomason v. Sanchez*, 398 F.Supp. 500 (D. N.J. 1975), aff'd, 539 F.2d 955 (3d Cir. 1976), a case bearing an uncanny factual resemblance to the present case. The plaintiff, on active duty with the United States Army at Fort Dix, New Jersey, was riding a motorcycle on base outside of his "duty hours" when he was struck by an automobile driven by a member of the Army performing his assigned tasks. After reviewing *Feres* and its progeny, the district court concluded as follows:

"The fact that Thomason was in a 'present for duty' status and not on any type of leave or pass, as sworn to in an affidavit by Captain James A. Kerchman,

Commander of the Medical Company at Fort Dix, brings plaintiff within the ambit of *Feres*, thereby negating the applicability of the FTCA."

398 F.Supp. at 504. This reasoning was expressly approved by the Court of Appeals. *See* 539 F.2d at 957. Sergeant Watkins in the present case was similarly "present for duty" and not on a pass or leave status. *Thomason* is thus direct support for the Government's position.

The Government also cited several other cases which involved similar, yet not so nearly identical, facts. *See Camassar v. United States*, 400 F.Supp. 894 (D. Conn. 1975), aff'd, 531 F.2d 1149 (2d Cir. 1976), (decedent fell off naval pier while on "authorized liberty"); *Coffey v. United States*, 324 F.Supp. 1087 (S.D. Cal. 1971), aff'd, 455 F.2d 1380 (9th Cir. 1972) (decedent killed on base while riding toward off-base liberty); *Zoula v. United States*, 217 F.2d 81 (5th Cir. 1954) (plaintiffs, who had access to passes, were going about base on personal business when hit by army ambulance); *Frazier v. United States*, 372 F.Supp. 208 (M.D. Fla. 1973) (plaintiff was injured on base during normal duty hours while running a personal errand); *Bucci v. United States*, C.A. No. 70–365–CW (S.W. Calif., Opinion of March 16, 1971) (*see* Exhibit "I" to United States' Motion of July 8, 1976) (while on liberty, plaintiff injured by Marine Corps bus on base); *Ritzman v. Trent*, 125 F.Supp. 664 (E.D. N.C. 1954) (plaintiff injured on base while off duty and while performing personal activity).

These courts all applied the *Feres* doctrine to bar FTCA recovery. Two factors emerge as decisive: the status of the claimant and the location of the accident. Where the claimant is injured on base while on "active duty," *Feres* applies virtually as a matter of law. *Cf. Beaucoudray v. United States*, 490 F.2d 86 (5th Cir. 1974) (fall from ship at sea); *Bankston v. United*

---

5. *See* Exhibit "A" to Government's Motion to Dismiss (July 8, 1976), the affidavit of Captain Karl B. Williams, the decedent's company commander and the approval authority for his pass and leave requests.

6. *See* Exhibits "F" and "G" to Government's Motion to Dismiss, *supra*, note 5; Deposition of Karl B. Williams (filed August 6, 1976) at 16; Deposition of Jackie L. Godwin (filed November 5, 1976) at 37.

*States,* 480 F.2d 495 (5th Cir. 1973) (medical malpractice, only issue was status of claimant). "Active duty" means not on leave or furlough, in the contemplation of *Feres* itself and its progeny. Where a serviceman is *subject to* duty, the doctrine applies. Thus, even plaintiffs who were off-duty (with or without a pass or liberty card) are barred by *Feres,* where the injury occurs on base.

In response to this impressive array of case law, the plaintiff has cited two opinions. In *Knecht v. United States,* 144 F.Supp. 786 (E.D. Pa. 1956), aff'd, 242 F.2d 929 (3d Cir. 1957), the plaintiff left the airbase on an overnight pass. While traveling in a private automobile on a public highway about seven miles from the base, the plaintiff's vehicle collided with a government truck/trailer. The district court applied *Brooks, supra,* based on its similar facts, and held for the plaintiff.

In *Hand v. United States,* 260 F.Supp. 38 (M.D. Ga. 1966), the plaintiff was on a 24-hour pass and was traveling from his off-base residence to an off-base bird hunt when his vehicle collided with an Army vehicle. The collision occurred on the portion of a through public highway which traversed the military base where the plaintiff was stationed. The court applied *Brooks,* holding that a pass was equivalent to a furlough:

> "There is no difference in the freedom which the man enjoys. In both instances the man is relieved from military duty during the period specified."

*Id.* at 41.

In both of plaintiff's cases, the serviceman was on a pass. Moreover, the collision

in *Knecht* did not occur on a military reservation.[7] In the present case, the plaintiff's decedent was not on a pass or on leave and was injured on base. No court has ever avoided *Feres* on such facts.

Plaintiff argues that the "pass" cases should nevertheless apply, because of intervening changes in Army practices. Plaintiff contends that outside of duty hours, a soldier is now free to leave base without a pass and without disclosing his destination. Plaintiff in effect contends that there is a new status, "off duty," which informally allows the serviceman the same freedom as a formal pass.

In support, plaintiff offers the deposition of Master Sergeant Jackie L. Godwin, who was First Sergeant of the decedent's company.[8] Sergeant Godwin explained that prior to June, 1972, a soldier at Fort Gordon needed to be on leave or in possession of a liberty pass in order to leave the base. The difference was that soldiers accrued thirty days' leave per year, while a liberty pass was purely a privilege administered by the company commander. A soldier's leave was debited to his annual account, while his pass was not. Liberty passes were also limited as to duration and usually as to distance. The soldier on pass had to sign a register indicating his destination, so that he could be contacted in case his pass was revoked and he was needed on base. (Leaves were also subject to cancellation.)

In June, 1972, the requirements of obtaining a liberty pass and signing out to leave base were abolished. Thenceforward, soldiers could leave the base merely by virtue

---

7. While the collision in *Hand v. United States,* 260 F.Supp. 38 (M.D. Ga. 1966) technically occurred within the borders of the reservation, the court noted that the road was public, not military, The plaintiff in *Hand* did not even begin his journey on the base. He was simply passing through the base, just as any civilian might.

8. Plaintiff's counsel had previously appended his own affidavit to plaintiff's Supplemental Brief (October 28, 1976). This affidavit states that counsel had discussed Fort Gordon leave practices with two unnamed sergeants, who had conveyed certain information but had re-

fused to make an affidavit. Counsel for the United States correctly points out that this affidavit, based upon hearsay and containing ultimate facts and conclusions of law, fails to meet the stringent requirements of Rule 56(e), Fed.R. Civ.P., as an affidavit in opposition to summary judgment. *See* 10 C. Wright & A. Miller, *Federal Practice & Procedure* § 2738 (1973). However, the affidavit was properly offered under Rule 56(f) to justify a continuance until the facts could be presented. The facts were later presented in the deposition of Sergeant Godwin now under consideration.

of their identity cards. Outside of his scheduled duty hours, and absent some "duty roster" activity, a soldier in May, 1975, was free to leave the base without a pass and without signing out. Sergeant Godwin agreed that this was in effect a new status which could be called "off duty."

As of May, 1975, a soldier would ordinarily have no need of a weekend pass if he was off duty. Passes could still be obtained in order to leave base on a duty day (e. g., to have Friday, Saturday and Sunday off) or to decrease the likelihood of being called in for special weekend duty.

Sergeant Godwin also explained that "present for duty" means one is not on leave, AWOL, in hospital, or on duty elsewhere; one is "subject to duty twenty-four hours a day." Deposition at 33. He also noted that since one on pass was still "present for duty," he could be called in for weekend duties, but ordinarily would be called upon only after those not on pass had been called.

Sergeant Godwin's testimony is consistent with that of Captain Williams, taken previously.[9]

■ Plaintiff argues that since the "off-duty" decedent was free as if he had a pass, the *Knecht* and *Hand* cases, *supra,* control. Even assuming, *arguendo,* that being "off duty" is now equivalent to being on pass, plaintiff's cases are distinguishable because of location, *i. e., Knecht,* like *Brooks,* involved an off-base traffic accident divorced from plaintiff's military service. The collision in *Hand* occurred on a public through road within the base limits. The plaintiff was simply "passing through" from one off-base point to another, while on pass.

It could be argued that an "off-duty" serviceman who is injured off-base in a traffic accident totally unrelated to his military service should now receive the benefits of the *Brooks* rationale. But the present plaintiff seeks to go one step beyond even this extension of *Brooks.* Here, the plain-

tiff was leaving an army softball team practice which he would not have attended but for his military service. *Cf. Chambers v. United States,* 357 F.2d 224 (8th Cir. 1966) (death in army swimming pool while decedent was not on furlough). He was traveling military roads, subject at all times to the control of his superiors. Such facts are controlled by *Feres,* not *Brooks,* as confirmed by the numerous cases cited by the Government.

In this Circuit, the rule was early laid down that ". . . to the extent that the decision of the Supreme Court in the *Brooks* case has survived the decision in the *Feres* case, it must and will be confined strictly to its precise facts . . . ." *Zoula v. United States,* 217 F.2d 81, 84 (5th Cir. 1954). Later cases in this Circuit have consistently followed this approach. While courts in other circuits have on occasion expressed misgivings about the *Feres* doctrine, they recognize that ". . . we are powerless to jettison *Feres* or to dislodge it sufficiently to create an exception for vehicular collisions involving servicemen." *Thomason v. Sanchez,* 539 F.2d 955, 957 (3d Cir. 1976) (Aldisert, J.). *See also Peluso v. United States,* 474 F.2d 605, 606 (3d Cir.), *cert. denied,* 414 U.S. 879, 94 S.Ct. 50, 38 L.Ed.2d 124 (1973).

Plaintiff's argument, in the end, proves too much. In effect, plaintiff contends that unless a serviceman is within "duty hours," *Feres* does not apply, even when the serviceman is "present for duty" on a military base, subject to military control. This is in reality the old "line of duty" reasoning in new dress. This latter argument has been repeatedly rejected, by most courts considering it, as contrary to *Feres.* The policies behind *Feres* included, in addition to maintenance of discipline, the awareness that special forms of compensation were available to armed forces personnel and their dependents, some of which are being enjoyed by the plaintiff here.[10] *See Feres*

---

9. *See* Deposition of Karl B. Williams (filed August 6, 1976).

10. *See* Exhibit "H" to Government's Motion to Dismiss (July 8, 1976). Said exhibit discloses that the plaintiff is receiving dependency and indemnity compensation as the decedent's widow pursuant to 38 U.S.C. §§ 410, 411 and 413.

*v. United States,* 340 U.S. 135, 144–45, 71 S.Ct. 153, 95 L.Ed. 152 (1950).

The plaintiff seeks a result which would fly in the face of *Feres* and many of its progeny. This Court will not torture logic to achieve such a result. This may be a "hard case," but the Court will resist the temptation to make "bad law."

The plaintiff does not contest any of the facts essential to the application of the *Feres* doctrine. The plaintiff has had an opportunity, subsequent to the motion hearing on October 18, 1976, to supplement the record to support her contentions regarding changes in Army policies. Such supplementation was accomplished with the deposition of Sergeant Godwin. There being no material factual issues on the applicability of the *Feres* doctrine, and the Government being entitled to judgment as a matter of law, its motion for summary judgment must be granted.

IV. *GEICO's Counterclaim and Cross-claims (Uninsured Motorist Coverage)*

As noted above, Government Employees Insurance Company (GEICO), the decedent's uninsured motorist carrier, was served as though a defendant pursuant to *Ga. Code Ann.* § 56–407.1(d). GEICO answered and counterclaimed and cross-claimed for declaratory relief. After the motion hearing, at which counsel for GEICO presented arguments and was opposed by counsel for plaintiff, these parties filed briefs. GEICO then filed a motion for summary judgment.

██ GEICO's position is that an "actual controversy," 28 U.S.C. § 2201, exists among the parties as to whether Williams was within the scope of his employment, and as to insurance coverage. Based on the pleadings and the hearing, such an "actual controversy" clearly exists. *See generally Aetna Life Insurance Co. v. Haworth,* 300 U.S. 227, 57 S.Ct. 461, 81 L.Ed. 395 (1937). Diversity jurisdiction is present to support the declaratory judgment claims, which may be properly brought as a counterclaim and cross-claims ancillary to the main case. *See* C. Wright & A. Miller, *Federal Practice & Procedure* § 2768 (1973).

GEICO has moved for a partial summary judgment for declaratory relief on three points: (1) that defendant Williams was within the scope of his employment; (2) that plaintiff cannot obtain a judgment against Williams, because of the Federal Drivers Act; and (3) that GEICO has no liability to the plaintiff on the decedent's uninsured motorist coverage.

For reasons stated in parts I and II above, GEICO must prevail on points one and two. The third point raises interesting issues of Georgia insurance law.

*Georgia Code Ann.* § 56–407.1(a) requires Georgia motor vehicle liability insurance policies to provide for payment to the insured of "all sums which he shall be legally entitled to recover as damages from the owner or operator of an uninsured motor vehicle . . . ." The Court of Appeals of Georgia has consistently interpreted this to impose a "condition precedent" on actions by insureds because of damages " 'from the negligence of a known uninsured motorist, that suit shall have been brought and judgment recovered against the uninsured motorist.' " *Cash v. Balboa Insurance Co.,* 130 Ga.App. 60, 61, 202 S.E.2d 252 (1973), *quoting State Farm Mutual Automobile Insurance Co. v. Girtman,* 113 Ga.App. 54, 147 S.E.2d 364 (1966).

GEICO contends that because of the Federal Drivers Act, plaintiff cannot recover a judgment against the known uninsured motorist, Williams. The condition precedent to suit against the uninsured motorist carrier being impossible to meet, no liability could attach to the insurer.

██ As a preface to this major argument, GEICO contends that the government vehicle herein was not "uninsured." An "uninsured motor vehicle" is defined in § 56–407.1(b) as being, *inter alia,* one as to which there is "no bodily injury liability insurance and property damage liability insurance . . . ." While not contending

that either the owner (United States) or the operator (Williams) of the government bus carried liability coverage or had otherwise met the statutory insurance requirements, GEICO advances the novel theory that the Federal Tort Claims Act is a self-insurance policy covering government vehicles. The drafters of that statute would be surprised by such a construction. Moreover, this argument is foreclosed by *State Farm Mutual Automobile Insurance Co. v. Carlson*, 130 Ga.App. 27, 30–31, 202 S.E.2d 213 (1973), which held that government-owned vehicles could not be excluded from the purview of "uninsured motor vehicles" by provisions of an insurance policy. The Court can find no significant distinction between the state-owned vehicle there and the federal vehicle here. The plaintiff in both cases is in the same position because of legal bars to recovery.

GEICO's major argument is that even if the bus was an "uninsured motor vehicle," there is no liability because no judgment can be had against the known uninsured motorist, Williams.[11] In *Wilkinson v. Vigilant Insurance Co.*, 236 Ga. 456, 224 S.E.2d 167 (1976), the Supreme Court noted the position of the Court of Appeals as expressed in *Cash v. Balboa Insurance Co., supra*: that judgment against a known uninsured is a condition precedent to suit against the insurer. The Georgia Supreme Court held this inapplicable where a judgment could not be obtained because of a discharge in bankruptcy. The court concluded that the purpose of § 56–407.1 was to adjudicate the insurer's liability to the insured, whether the uninsured motorist is known or unknown. Either way, an action was allowed in which the insurer was served and was "the real party in interest . . .." *Id.* at 456–57, 224 S.E.2d 167, 168.

Wilkinson was decided February 24, 1976. On March 31, 1976, the statute was amended to incorporate the holding in *Wilkinson*. *See* Georgia Laws 1976, at pages 1195 and 1196, *codified as Ga. Code Ann. § 56–407.-1(a)* (2d paragraph). The preamble stated that it had

". . . always been the intention of the General Assembly that an uninsured motorist's [sic] insurance carrier should pay the damages sustained by its insured and shall not escape liability by pleading any phase of bankruptcy proceedings . . .."

The reasoning of *Wilkinson*, if applicable, would be fatal to GEICO's position. GEICO seeks to distinguish *Wilkinson* in several ways. GEICO cites *Vaughan v. Collum*, 236 Ga. 582, 224 S.E.2d 416 (1976), which held that service of a tort complaint against an uninsured motorist carrier was governed by the tort, and not the contract, limitation period. The court noted that "if there is no tort liability, there is no responsibility to pay the tort judgment as provided by the [uninsured motorist] contract." *Id.* at 582, 224 S.E.2d at 416.

■ This language does not change the effect of *Wilkinson*, which allowed the tort action to proceed against a known uninsured motorist "as though it were a John Doe action . . .." 236 Ga. at 457, 224 S.E.2d at 168. If the insured can establish tort *liability*,he can recover from his uninsured motorist carrier regardless of whether he can *recover* against the uninsured motorist. *Vaughan* simply does not indicate a limitation of *Wilkinson* to bankruptcies, as urged by GEICO.

■ GEICO must support such a limitation in order to prevail here. GEICO asserts a distinction between "rights" and "remedies." The argument is that a bankruptcy discharge blocks a creditor's reme-

---

11. GEICO did not address the issue of whether the United States, the owner of the vehicle, would also be an "uninsured motorist" here.

The term "uninsured motorist" is not explicitly defined in the statute; § 56–407.1(a) refers to recovery "from the owner or operator of an uninsured motor vehicle . . .." Apparently, either can be an "uninsured motorist." *See* *State Farm Mutual Automobile Insurance Co. v. Girtman*, 113 Ga.App. 54, 56, 147 S.E.2d 364, (1966). But the fact that the United States may also be an "uninsured motorist" here makes no difference. Since recovery against the United States is barred by *Feres, supra*, the legal issue is identical.

dies at law, but does not destroy his legal rights or a cause of action thereon. *See generally Bell v. Dawson Grocery Co.,* 120 Ga. 628, 630, 48 S.E. 150 (1904). A bankruptcy discharge is a valid defense to a claim or judgment on a debt, operating as "a bar to all future legal proceedings for the enforcement of the discharged debt." 1 A *Collier on Bankruptcy* ¶ 17.27 at 1719 (4th ed. 1976) (J. Moore ed.). *See also* Bankruptcy Act § 14f, 11 U.S.C. § 32(f).

GEICO contends this effect of the Bankruptcy Act is fundamentally different from that of the Federal Drivers Act, which makes the Federal Tort Claims Act remedy against the United States "exclusive of any other civil action . . . ." 28 U.S.C. § 2679(b). GEICO contends this means that "there is no cause of action whatever against the employee himself." *Garrett v. Jeffcoat,* 483 F.2d 590, 593 (4th Cir. 1973).

The Court of Appeals for the Fifth Circuit has not spoken as forcefully to this point, remaining close to the statutory language in stating that the federal government assumes responsibility "to the exclusion of any action against such employees personally." *United States v. Myers,* 363 F.2d 615, 619–20 (5th Cir. 1966).

Any difference between the Federal Drivers Act, as interpreted by the Fifth Circuit, and the effect of a bankruptcy discharge, is legally insignificant. Section 14f of the Bankruptcy Act, 11 U.S.C. § 32(f), requires a discharge order to nullify any prior or subsequent judgments on the debts, and to enjoin creditors from instituting or continuing any action to collect the discharged debts.[12] The effect is the same as that of the Drivers Act: to block the institution or continuation of suit against the protected party on covered transactions. The asserted "distinction" is insignificant.

This conclusion is required by strong policy considerations, as well as by logic. Un-

der *Wilkinson,* as approved by the General Assembly of Georgia, recovery against an uninsured motorist carrier may be had where an insured would be "legally entitled to recover" against an uninsured motorist, *but for* some legal bar to recovery unrelated to the facts of the collision. The policy is clear: to allow recovery against the carrier when the tortfeasor is uninsured, whether he is known or unknown and whether he is amenable to judgment or not. For this Court to refuse to apply *Wilkinson* in this case would be to ignore the reasoning and policy judgments of the highest court of this state as well as those of its legislature. This the Court obviously cannot do. The path this Court must take was charted by the Georgia Supreme Court in *Wilkinson,* where it held that:

> "Since no liability can attach to the known uninsured, the action [must] proceed as though it were a John Doe action and the insured can establish 'all sums which he shall be legally entitled to recover as damages,' caused by the uninsured motorist."

236 Ga. at 457, 224 S.E.2d at 168.

GEICO's motion for partial summary judgment must be denied as to the question of insurance coverage.

## V. *Motion to Intervene*

The applicant for intervention, Joyce Ann Aquino, is the decedent's ex-wife and the natural mother and court-appointed guardian of Jimmy D. Watkins, Jr., and Jeffrey C. Watkins, the decedent's two minor children. Under Georgia law, the plaintiff as widow may recover the full value of the decedent's life, subject to the law of descent. *See Ga. Code Ann.* § 113–903(3). The natural mother seeks to intervene as next friend as a matter of right under Rule 24(a)(2), Fed.R.Civ.P., contending that the

---

**12.** 11 U.S.C. § 32(f) provides, in pertinent part, as follows:

> "(f) An order of discharge shall—
>
> "(1) declare that any judgment theretofore or thereafter obtained in any other court is null and void as a determination of the personal liability of the bankrupt with respect to any of

the following: (a) [listing discharged debts].
* * *

> "(2) enjoin all creditors whose debts are discharged from thereafter instituting or continuing any action or employing any process to collect such debts as personal liabilities of the bankrupt."

children's interest in the recovery by the plaintiff is not adequately represented.

The plaintiff and the United States object that the applicant would not be a proper party plaintiff under Georgia law. *Ga. Code Ann.* § 105–1302 provides:

"A widow, or, if no widow, a child or children, minor or sui juris, may recover for the homicide of the husband or parent, the full value of the life of the decedent, as shown by the evidence. The widow may release the alleged wrongdoer without the concurrence of any children or any representative of a child without any order of court, provided, the consideration for such release shall be held by the widow subject to the provisions of section 105–1304."

The cases hold that "[t]his section gives a right of action to the children only in the event there is no widow." *Bloodworth v. Jones*, 191 Ga. 193, 195, 11 S.E.2d 658, 659 (1940).

The applicant contends that *Hanna v. Plumer*, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965) mandates the supremacy of Federal Rule 24(a)(2) over state law, requiring her motion to be granted. But even if Rule 24(a)(2) is applied it appears that the children's interests are "adequately represented" by the plaintiff. It is clearly in the plaintiff's interest to obtain as large a recovery as possible. The applicant points to § 105–1302's allowance of a release of the tortfeasor by the widow without the concurrence of the children and without court order, as a threat to the children's interest. However, the proviso of § 105–1302 forces the widow to hold any recovery subject to § 105–1304, which makes the recovery "subject to the law of descents, as if it were personal property descending to the widow and children from the deceased." And § 113–903(3) gives the plaintiff a child's one-third share here. The plaintiff cannot act to harm the children's interest without equally harming her own. Thus, there is no suggestion of inadequate representation by the plaintiff, since her interest is the same as that of the children. *See generally* 7A C.

Wright & A. Miller, *Federal Practice & Procedure* § 1909 at 524–25 (1972).

The motion to intervene must be denied.

## ORDER

For the reasons stated in the above memorandum opinion, it is hereby

ORDERED that the motion of defendant, Joseph L. Williams, to dismiss the complaint, construed as a motion for summary judgment, be granted. Williams is hereby dismissed as a party, pursuant to the Federal Drivers Act, 28 U.S.C. § 2679(b), and the Clerk is directed to enter a judgment of dismissal as to him.

IT IS FURTHER ORDERED that the motion of the United States for summary judgment be granted; the United States has no liability under the Federal Tort Claims Act, 28 U.S.C. § 2671 et seq., under the rule in *Feres v. United States*, 340 U.S. 135 (1950), and the Clerk is directed to enter an appropriate judgment.

IT IS FURTHER ORDERED that the motion to intervene by Joyce Ann Aquino be denied.

IT IS FURTHER ORDERED that the motion of Government Employees Insurance Company for partial summary judgment on its counterclaim and cross-claims for declaratory relief be granted, in part, and denied, in part, as evidenced by the following declaratory judgment.

IT IS HEREBY ADJUDGED that defendant, Joseph L. Williams, was within the scope of his employment with the United States when the collision in question occurred.

IT IS FURTHER ADJUDGED that the plaintiff may not obtain a personal judgment against defendant Williams because of said collision.

IT IS FURTHER ADJUDGED that under *Wilkinson v. Vigilant Insurance Co.*, 236 Ga. 456, 224 S.E.2d 167 (1976), since no judgment is obtainable against the known uninsured, the action must proceed as though it were a John Doe action, and the plaintiff may establish all sums which she

shall be legally entitled to recover as damages, caused by the uninsured motorist.